## Kidd, et al. v. Walker and Lozier.

(Decided January 20, 1925.)

### Appeal from Greenup Circuit Court.

1. Schools and School Districts—Evidence Held to Sustain Finding as to Location of District Boundary.—In action to enjoin school district trustees from levying and collecting taxes on plaintiffs' property, involving issue whether such property was within such district, evidence held to sustain finding of chancellor as to boundary of district.

2. Appeal and Error—Finding of Fact by Chancellor on Conflicting Evidence Not Disturbed.—Finding of chancellor on question of fact will not be disturbed where evidence is conflicting, and on consideration of the whole case the mind is left in such doubt that it cannot be said with reasonable certainty that chancellor erred.

THOMAS E. NICKEL for appellant.

GLENN E. MILLER for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

By the judgment appealed from herein the trustees of South Portsmouth graded school district of Greenup county, Kentucky, were enjoined from levying and collecting taxes on the property lying within a tract of land known in the record as the Gaylord tract. Some ten or twelve years ago the Gaylord tract, which prior to that time had been waste land, was subdivided and sold as town lots and a number of residences have been built thereon. There is no question from the evidence in the record but that all the parties to this litigation, up until the controversy arose about a year before it was instituted, understood that those residing on the Gaylord tract were within the boundary of the Fullerton graded school district and were not within the boundary of the South Portsmouth graded school district. All those residing within the Gaylord tract sent their children to the Fullerton school, were taxed by and paid taxes to the Fullerton graded school district, and were never taxed by nor paid taxes to the South Portsmouth graded school district. There is no question but that the boundary of the Fullerton graded school district as established by orders of the Greenup county court did not include the Gaylord tract and the property of those who reside

therein. The fact is not conclusive of the question presented by the appeal, however, because the South Portsmouth graded school district was established prior to the establishment of the Fullerton graded school district, and as it was established its eastern line was fixed to run with the western line of what was then common school district No. 10 of Greenup county. In view of that fact the question in issue on the appeal can be determined correctly only by determining whether the old common school district No. 10 included within its boundary the Gaylord tract or whether it excluded it. If the Gaylord tract was included in the boundary of common school district No. 10, the judgment rendered herein is correct. If it was not so included then the contention of appellants is correct and those who now reside within the Gaylord tract are in the boundary of the South Portsmouth graded school district and their property is subject to taxation in that district. The controversy seems to have arisen out of the condition of the record book in which the boundaries of the old common school districts were recorded and from the loss of one of the books. Charles A. Smith seems to have been a county school commissioner of Greenup county from 1886 to 1900. When he entered upon that office the old record book in which the boundaries of the common school districts were recorded fixed the boundary line as between what was then common school district No. 10 and common school district No. 11 beyond question. The South Portsmouth graded school district embraces what formerly was district No. 11 and district No. 56. The controversy is as to the dividing line between district No. 11, now a part of South Portsmouth graded school district, and district No. 10, now Fullerton graded school district. The dividing line between the two districts, as shown by the old records on file herein at the time Smith became county school commissioner, included in district No. 11 not only the Gaylord tract in controversy herein, but also even more of the territory of district No. 10, now included in the Fullerton graded school district. Smith testified that near the close of his term of office, in order to take into that district enough additional territory to have the required number of children to maintain a school, he changed the lower line of district No. 10 by moving it westward, taking into that district a portion of the territory that had been included within district No. 11 when he entered the office. He testified further that at the time he purchased

a new record book and had copied into it not only the boundary of district No. 10, as so enlarged by him, but also the boundary of all the common school districts of Greenup county as they then existed, and that that record book was made and became a part of the records of the office of county school commissioner. That book has been lost.

While Smith testified positively as to making the change in the boundary and the enlargement of district No. 10 by taking into it a part of what formerly had been district No. 11, as the transaction had occurred some 35 years before he testified, he frankly stated that he could not remember just what the change was or just where the new boundary line between the two districts was located. It is unfortunate that the record made by Smith in changing the boundaries of the two districts has been lost, but for which doubtless there would have been no controversy. Following Smith's term of office L. R. McCarty seems to have been county school commissioner of Greenup county. He probably has since died as he did not testify herein. There is a notation at the foot of the boundary of district No. 10 as it appears in the old book, assumed to have been made by McCarty as his initials "L. R. Mc." appear at the end of it. It reads: "This boundary so changed as to extend down the Ohio river to the lower line of the Stoner place by Chas. A. Smith, C. S., per L. R. Mc." Smith testified that he did not enter that notation on the old record book and that no one entered it for him or at his direction; and he further testified that he does not remember whether the change as made by him extended only to the lower Stoner line, as contended by appellants, or whether it extended to the lower Gaylord line, as contended by appellees. Under those circumstances it does not seem to us that the notation on the old record book can be taken by us as an official record or as being conclusive of the question presented. It is not even established that McCarty made the notation. Under those circumstances, in view of the loss of the record made by Smith at the time the change was made, there seems to be no alternative but to resort to parol testimony to establish what change in the boundaries was actually made by Smith. No witness in the record was able to testify as to ever having seen the record made by Smith or as to the location of the boundary line between the two districts as Smith's record de-

fined it. The only evidence in the record shedding light on that question is that of the patrons of the respective districts showing the location of the dividing line as understood by them by the school attended by the children residing in the disputed territory and the district by which they had been taxed following the change in the boundary. The South Portsmouth graded school was established in 1893. The western or lower end of the Gaylord tract is the eastern or upper line of the Burton tract. Mrs. Burton, who had lived upon the Burton tract for thirty years or more before she testified, stated positively that the upper line of her tract of land had always been regarded as the boundary line between the two districts; that all the children from her upper line down had always attended the common school of district No. 11 until that district was thrown into the South Portsmouth graded school district, and from that time until the controversy arose had always attended the South Portsmouth graded school, while all the children residing above her upper line had always attended the common school of district No. 10 and the Fullerton graded school, after it was established. She likewise testified that her property and all below it had always been taxed for the maintenance of the South Portsmouth graded school, while all that above her upper line had been taxed for the maintenance of the Fullerton graded school. The force of that testimony is somewhat weakened by the fact that until about ten or twelve years before the controversy arose the Gaylord tract, which is in controversy, was merely waste land of no value, and that no one resided on it. However, as stated above, some ten or twelve years before the controversy arose that tract was subdivided and sold as town lots and the first residence was built thereon shortly thereafter; and since then successive residences have been built until now there are on the Gaylord tract a number of residences and considerable population. It is admitted by all who testified, however, that up until about a year before this litigation was instituted all those who bought lots within the Gaylord tract and erected houses and resided thereon have sent their children to the Fullerton graded school and have been taxed by the trustees of that school for its support, including the retirement of a bond issue voted to build a school house. None of them patronized the South Portsmouth school and none of that property was taxed for its support.

The chancellor adjudged under these facts that the change made by Smith while county school superintendent of the boundary line of districts Nos. 10 and 11 extended the boundary line of the old district No. 10 westward to the west or lower line of the Gaylord tract and the east or upper line of the Burton tract. The east line of the South Portsmouth graded school district is the same line. Having reached that conclusion, the chancellor adjudged that the trustees of South Portsmouth graded school district had no authority to levy taxes upon the property above that line and enjoined them from so doing. The records are so inconclusive as to be of little value and the contemporaneous construction placed upon them by those interested seems to have been the deciding factor with the chancellor. The facts are such as to bring the case clearly within the rule that a finding of the chancellor on a question of fact will not be disturbed on appeal where the evidence is conflicting and on a consideration of the whole case the mind is left in such doubt that it can not be said with reasonable certainty that the chancellor erred in his conclusions. Jones v. Tarry, 187 Ky. 700, 220 S. W. 523.

Judgment affirmed.