## Campbell v. Wilder.

(Decided March 22, 1935.)

E. N. INGRAM for appellant.

L. R. WILSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

J. W. Campbell and Danie Wilder were opposing candidates for the office of trustee in subdistrict No. 34, known as Mathel, in Bell county, Ky., at an election held in July, 1934. There were cast and counted for Campbell 46 ballots, and for Wilder 51; 7 were spoiled and not counted for either of them. The returns were duly made to the county board of education, and on its canvass thereof a certificate of election was issued Wilder.

Campbell contests, charging that J. H. Cox, Lula Cox, Vanis Cox, and W. A. Green, Sr., had cast their ballots for Wilder, and they were nonresidents of the

district; also, Crit Stewart, Creta Stewart, Gordon Green, and Gilmore Cox had cast their ballots for him, and they were not legal voters.

J. H. Cox, Lula Cox, Vanis Cox, and W. A. Green, Sr., were members of the same household at the time they voted at the school election. Therefore, conceding, without deciding, that Crit Stewart, Creta Stewart, Gordon Green, and Gilmore Cox were not legal voters, and not entitled to cast their vote for either of the candidates, if J. H. Cox, Lula Cox, Vanis Cox, and W. A. Green, Sr., were residents of subdistrict No. 34 (Mathel), and legally entitled to vote for Wilder, he received the majority of the votes cast.

Section 4426a-2, Kentucky Statutes (Acts 1916, c. 24, p. 162, sec. 77), conferred the authority upon the county superintendent of schools, the county judge and the county attorney of each county of the commonwealth to divide their county into educational divisions containing as nearly as possible an equal number of children of school age and then subdivide each of the educational divisions into school subdistricts. Section 4426-1 (Acts 1926, c. 82, p. 282, sec. 1) declares every county shall constitute one school district, not including graded school districts or city school districts, containing a city of the first, second, third, and fourth class, and specifically authorizes the county board of education, except as otherwise provided in the act, to change the boundary of school districts of the county school system, and, when necessary, to establish new subdistricts or to unite districts or parts of subdistricts.

It is agreed in the briefs of the parties that there is no conflict in these sections, and that they were in operation at the time subdistrict No. 34 (Mathel) was established and its boundary fixed. It is admitted that the boundary of subdistrict No. 34 (Mathel), as it appears on the record of the county board of education, embraces the residence in which the Coxes and Green, Sr., had continuously resided for years next before, as well as at the time, the election was held in 1934. It is not disputed that they had, for a number of years next before the 14th day of July, 1934, voted in the school elections held in the Board Tree Hollow district which adjoins Mathel, and at the election held in May, 1933, in the Board Tree Hollow district, Vanis Cox was voted

for, and elected, trustee thereof; assumed and discharged the duties of the office for the term for which he was elected.

This is not a case involving disputed boundary lines of districts. There is no conflict or overlapping of the boundary of subdistrict No. 34 (Mathel) and Board Tree Hollow district. Their boundaries are not indefinite. There is no difficulty in locating the lines thereof. The case is clearly distinguishable from Castleman v. Trustees of Common School District No. 42 (Bailey v. Trustees of Common School Dist. No. 42), 68 S. W. 17, 24 Ky. Law Rep. 88.

Campbell argues that:

"The case is that all people living in each of these sub-districts have recognized certain lines as placing them in their respective sub-districts and have lived up to these lines from 1918 to 1934; the board of education has so recognized these lines by holding school elections, recognizing trustees, listing the children in each of the sub-districts and by carrying on the school government in recognition of these lines from 1918 to 1934."

To support this statement, he insists that such "contemporaneous construction continued for such a great length of time is of controlling effect in the location of the boundaries" of these districts, and cites to us Castleman v. Trustees of Common School District No. 42 (Bailey v. Trustees of Common School Dist. No. 42), supra; Kidd et al. v. Walker, 206 Ky. 716, 268 S. W. 335.

It was neither shown nor attempted to be shown that the boundaries of subdistrict No. 34 (Mathel) and Board Tree Hollow district, as they appeared on the record of the board of education, prior to, and at the time of the election in 1934, were in any respect altered or changed after they were originally laid out by the county superintendent, the county judge, and county attorney, and adopted by the county board of education. In so far as the evidence shows, they were in 1934 as originally laid out, and established and fixed and entered on the record of the board of education. Its record entered in 1933, accepting and approving the boundaries as they now appear therein, was sufficient to establish in 1934 the original boundary of each district, in the absence of some evidence other than that merely show-

ing some of the voters residing therein had previously voted, or held the office of trustee in the Board Tree Hollow district.

We are not authorized to assume that the boundaries thereof in 1934 were different in any respect from those, if any, defined by the superintendent, the county judge, and the county attorney in the exercise of the power conferred upon them by section 4426a-2.

It must be conceded that if in reality the Coxes and Green, Sr., actually resided in subdistrict No. 34 (Mathel) from 1918 to 1934, their voting, and Vanis Cox holding the office of a trustee, in Board Tree Hollow district, for any, or the same length of time, did not disqualify them from voting in the district in which they actually resided at the election of 1934. Penny v. McRoberts, 163 Ky. 313, 173 S. W. 786, 790; Land v. Land, 244 Ky. 126, 50 S. W. (2d) 518.

This question was determined in Land v. Land. Therein the contestant claimed because citizens had been recognized as voters in a precinct (established by the map of 1912) and honestly believed that they were legal voters in the precinct which they had so recognized, therefore, they were entitled to vote in it. We ruled that "the court properly held that those residing in this disputed territory were not legal voters" in that precinct, though they recognized it as their precinct and had previously voted in it.

In Penny v. McRoberts, the challenged voter had been in the habit of going to, and voting in, a precinct in which he did not reside, and in which, therefore, he was not entitled to vote, and when his vote cast in the precinct in which he in fact resided, was challenged, we ruled that his vote should be counted in the latter precinct.

In disposing of his right to vote therein, we said:

"We do not think that his illegally voting there [in the precinct in which he did not reside] would prevent a lawful vote from him from being received and counted in a district where he had a legal right under the laws to exercise his suffrage. * * * A citizen has no right to select a voting place for himself, other than his legal home and place of residence."

Viewing Campbell's right to challenge the votes of Coxes and Green, Sr., in the light of the principles reiterated in those cases, it is our view the trial court correctly declined to deduct their votes from those cast for Wilder and properly adjudged he was entitled to the certificate of election.

With this view, the judgment is affirmed.